No. 15,986.

KLIPP *v.* GRUSING.

(200 P. [2d] 917)

Decided December 6, 1948.

Mr. ROBERT L. MCDOUGAL, for plaintiff in error.

Mr. THORNTON H. THOMAS, JR., for defendant in error.

*In Department.*

Mr. Justice Jackson delivered the opinion of the court.

In an action for adjudication of the right to possession of real estate and for damages for alleged wrongful trespass brought under rule 105 R.C.P. Colo., defendant in error, plaintiff in the trial court, recovered judgment for the right to exclusive possession of one hundred sixty acres of land in Kit Carson county, Colorado, together with an adjoining acreage upon which defendant's cattle had been grazing. The judgment was entered after a three-day trial to a jury, at the conclusion of which, counsel for defendant and counsel for plaintiff both moved for a directed verdict. The court overruled both motions, but on its own motion took the case from the jury. It found that there was a tenancy at will; also, "that the testimony as offered in support of damages, pasture rent and labor is purely speculative and so uncertain that it should not be submitted to the jury." This included all items in defendant's counterclaim, as well as in plaintiff's complaint. The court ordered, "That possession of the property be delivered to plaintiff on or before August 1, 1947; that an accounting be made for the corn rent on or before August 1947; that [defendant's] cattle be removed on or before August 1947;" and that defendant's buildings and improvements be removed on or before September 1, 1947.

Among the fifteen specifications of points is No. 4: "The trial court erred in taking disputed questions of fact from the jury, and directing a verdict in favor of the plaintiff * * *," and No. 7: "The trial court invaded the province of the jury."

In support of the trial court's action in taking the case from the jury, counsel for plaintiff argues that, since both parties moved for a directed verdict, this was tantamount to withdrawing the case from the jury.

*Wells v. Blystad,* 91 Colo. 346, 14 P. (2d) 1078. However, Rule 50 (a), R.C.P. Colo., has superseded that case and that of *Parker v. Plympton,* 85 Colo. 87, 273 Pac. 1030. This rule provides, inter alia: "A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts."

■ This follows the rule and practice in federal courts. *United States v. Brown,* 107 F. (2d) 401. Accordingly, "Where evidence did not warrant direction of verdict for either party, but trial court directed verdict for plaintiff, judgment must be reversed and new trial granted, notwithstanding motion by both sides for directed verdict. Rules of Civil Procedure for District Courts, rule 50 (a), 28 U.S.C.A. following section 723e." (cited in *United States v. Brown, supra.*)

The evidence discloses that defendant first talked with plaintiff in the fall of 1944 about working for him and renting some land. At that time plaintiff seems to have been primarily interested in procuring men to work on his three thousand three hundred sixty acre tract. Defendant at the time was a tenant on a neighboring tract where his tenancy was about to expire. He was looking for a new place to locate where he could either work or enter into a landlord-tenant relationship. Early in 1945 defendant began working the quarter section of plaintiff's land mentioned in the complaint, apparently under an oral agreement permitting him to use the quarter section and account for the landlord's one-quarter share of any crop raised on it, together with an agreement to work for wages whenever plaintiff needed extra help. On this tract, in May 1945, he planted hybrid corn at the suggestion of plaintiff who furnished the seed. Defendant also planted some white corn and sixty to sixty-five acres of yellow corn—approximately one hundred acres in all. During the year 1945 defendant did not live on plaintiff's land. In the fall of that year he asked the privilege of pasturing his thirty-five head of cattle and

nine small calves on plaintiff's land, and plaintiff agreed, provided defendant would at the same time take care of two hundred head of plaintiff's cattle which he was intending to put on pasture. Defendant apparently was to pay two dollars per head per month for pasturing his cattle, and did put his cattle on the property from December to March—approximately three months.

Early in the spring of 1946 defendant asked the privilege of moving some of his personal property to the place until he could locate it otherwise. This property consisted of a shack, in which defendant lived, and small outbuildings, as well as farm equipment. Plaintiff apparently granted this privilege, and defendant thereupon brought his chattels to plaintiff's land where he located and continued to live. He planted corn in the spring of 1946 and pastured his cattle. In the fall he planted wheat where the corn had been grown the previous season. In the process of drilling, he had to move the harvested corn twice. The wheat crop, at the time of the trial in June 1947, seems to have been of little or no value.

Counsel for plaintiff also argues that "there is no actual dispute in the facts in this case, and therefore on the basis of the record and the admissions of the defendant there was nothing to submit to the jury." After an examination of the record, we are of the opinion that there were a number of fact issues in the evidence which should have been submitted to the jury for determination.

Counsel for plaintiff argues that the undisputed evidence shows the existence of four distinct and separate transactions between the parties: (1) A contract in the fall of 1944-5 involving the employment of defendant in the farming season of 1945 as extra help when needed; (2) a pasturing contract made in the fall of 1945 under which defendant agreed to pay plaintiff two dollars per head per month for pasturing thirty-five head of cattle on plaintiff's wheat in the winter of 1945-6; (3)

a grass pasturing contract made in the summer of 1946 under which defendant agreed to look after about two hundred head of cattle for plaintiff in return for the privilege of pasturing fifty head of cattle on plaintiff's grass; and (4) a contract, license or permission, made prior to March 1946, under which defendant moved his buildings and improvements onto plaintiff's land until he could find some other location. Assuming the existence of these four separate deals, the testimony of the two parties to this litigation appears to be at some variance in respect to all of them. Plaintiff's testimony is, that the defendant failed to give assistance when called upon as extra help when needed, while defendant testified that he was willing to work whenever called upon to do so, and his testimony tended to explain one incident when he left the field. As to the two pasturing transactions, the evidence of the parties is in conflict as to what is due under them. On the fourth deal, concerning defendant's chattel property on plaintiff's land, defendant claims to have installed permanent improvements thereon, such as a new fence, by way of compensation, while plaintiff's position is that he had granted a mere temporary license. Defendant also asserts that he had a tenancy from year to year, and that being the case he was entitled to a three-months' notice before he could be ejected; that therefore he had the right to remain on the land until the spring of 1948.

We are of the opinion that the matters in dispute should have been submitted to the jury as the trier of the facts.

The judgment is reversed, and cause remanded.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HAYS concur.