Stanley **KESSMAN**, Plaintiff-Appellant,

v.

The **CITY AND COUNTY OF DENVER,** a Colorado municipal corporation, and John Simonet, Manager of Safety and Excise, and Ex-Officio Sheriff of the City and County of Denver, and several John Does, duly authorized Deputy Sheriffs of the City and County of Denver, whose true names are to the Plaintiff unknown, Defendants-Appellees.

No. 84CA0534.

Colorado Court of Appeals, Div. II.

Oct. 31, 1985.

Eckelberger & Feldman, Ethan D. Feldman, Littleton, for plaintiff-appellant.

Stephen H. Kaplan, City Atty., Gerald Himelgrin, Asst. City Atty., Denver, for defendants-appellees.

METZGER, Judge.

Plaintiff, Stanley Kessman, appeals a judgment entered upon a jury verdict in favor of defendants, City and County of Denver, John Simonet, Manager of Safety and Excise and Ex-Officio Sheriff of the City and County of Denver, and several "John Does" as duly authorized deputy sheriffs of the City and County of Denver. Kessman brought a negligence action after his merchandise was stolen while in the sheriff's custody pursuant to a temporary restraining order which had been issued by the Denver District Court in an abatement of nuisance action brought against Kessman by the City. He asserts that the trial court erred in refusing his tendered jury instruction concerning the scope of the sheriff's duty of care. We reverse and remand for a new trial.

Kessman owned and operated a business known as Stan's Colorado Gold and Silver and Coin Exchange. In conducting this business, Kessman bought gold and silver items, jewelry, and assorted other merchandise which he then resold for a profit.

On December 15, 1980, pursuant to § 16–13–301, C.R.S. (1978 Repl.Vol. 8), the Denver District Attorney obtained a temporary restraining order from the district court and directed to the Manager of Safety directing him:

"To forthwith seize and close Stan's Colorado Gold and Coin, Denver, Colorado, and to keep the same effectually closed against its use to any purpose until further order of this court. Such seizure to include fixtures and contents of Stan's Colorado Gold and Coin and personal property of every kind and description . . . ."

The same day, deputy sheriffs seized and closed Kessman's business, placing locks on all entrances and exits. Since the business was equipped with a burglar alarm system, Kessman gave one of the deputy sheriffs the alarm key and explained the workings of the alarm system. The deputy sheriff telephoned the burglar alarm company and instructed it to maintain the burglar alarm system and to send the bill to the Denver District Attorney. This was done at the request of a Deputy District Attorney who was present during the sheriff's execution of the temporary restraining order.

The sheriff took no steps to ascertain whether the alarm system was operating properly or whether the bill had been paid. On February 2, 1981, a burglary of the premises was discovered, and, upon inquiry, a deputy sheriff discovered that the alarm bill had not been paid. The sheriff took no further action concerning the bill. On February 10, 1981, a second burglary was discovered, and the sheriff learned that the alarm bill still had not been paid. On February 12, 1981, the temporary restraining order was vacated.

## I.

Kessman first contends that the trial court erred when it refused his requested instruction that:

"A sheriff who has taken into custody property of another is bound to exercise

that degree of care in the keeping of that property which a reasonably prudent person would exercise with respect to his or her own property."

Contending that the situation here is analogous to that involving execution of a writ of attachment and levy upon a building and its contents, Kessman argues that the sheriff was in the position of a bailee and that the jury should have been so instructed. The defendants argue that the situation here is analogous to that involving execution of a writ of restitution under the forcible entry and detainer statute. *See* § 13–40–101, et seq., C.R.S. In that instance, once a sheriff has removed a tenant's property without damage, no liability may attach since there is no duty to safeguard the tenant's belongings. We agree with Kessman.

■ A constructive bailment is created, without the need of an express agreement, where possession and control over the subject property passes to the bailee. *Christensen v. Hoover*, 643 P.2d 525 (Colo.1982). Here, since the sheriff had possession and control of Kessman's property pursuant to the temporary restraining order, a constructive bailment relationship was created between Kessman and the sheriff.

■ The very nature of a bailment relationship implies confidence and trust involving the exercise of some degree of care to protect the property from loss, damage, or destruction. *Christensen v. Hoover, supra.* The majority of jurisdictions have held that a sheriff who executes a writ of attachment and levy is in the position of a bailee for hire, and must exercise that degree of care in the keeping of the property which persons in general exercise in their own concerns. *See, e.g., Ritter v. Castellini*, 173 N.J.Super. 509, 414 A.2d 614 (1980); *State to Use of Henderson v. Clark*, 41 Del. 246, 20 A.2d 127, 138 A.L.R. 704 (1941).

The restraining order required the sheriff to take possession of Kessman's property pursuant to the statute authorizing abatement of a public nuisance. Section 16–13–301, et seq., C.R.S. (1978 Repl.Vol. 8). In our view, this order is substantially similar in effect to an order authorizing a sheriff to execute a writ of attachment and levy upon a debtor's property.

■ In both instances, the rights of the parties have yet to be adjudicated, and the order maintains the status quo of the property pending that adjudication. Thus, no property can be sold during this time, nor should any property be removed for any other reason. On the other hand, in a forcible entry and detainer proceeding pursuant to § 13–40–122, C.R.S., the writ of restitution issues only after the rights of the parties have been adjudicated. Once the sheriff executes the writ, his duty ends, and the status quo of the property need not be maintained.

■ Thus, the trial court's refusal to give the proposed instruction was error.

## II.

■ Kessman also contends that the trial court erred in refusing to instruct the jury, as he requested, that:

"If it is proven that property of another in the custody of a sheriff has been lost, stolen, or damaged, then it becomes the duty of the sheriff to go forward with proof to show, if he can, that proper care in the keeping of that property was in fact exercised by him."

We agree.

■■ In a bailee-for-hire relationship, the bailor is aided by a presumption of negligence if the bailee either fails to return the bailor's property or returns it in a damaged condition. *Christensen v. Hoover, supra.* Once the bailor establishes a prima facie case, *i.e.*, a bailment relationship and proof of loss or injury, a presumption of negligence arises. The burden of going forward then shifts to the bailee, who must rebut the presumption to avoid being held liable as a matter of law. *Christensen v. Hoover, supra; Chabot v. Williams Chevrolet Co.*, 30 Colo.App. 277, 491 P.2d 612 (1971).

Here, the instruction tendered by Kessman was an accurate statement of the law, and should have been given to the jury.

## III.

Finally, Kessman contends that the evidence was unequivocal that his property was stolen while in the sheriff's possession, thus establishing a prima facie case. Consequently, he argues, the trial court erred in refusing to direct a verdict of liability in his favor. We disagree.

The issues of negligence and causation are to be resolved by the trier of fact. *Hipps v. Hennig*, 167 Colo. 358, 447 P.2d 700, 42 A.L.R. 902 (1968). If the facts of a case do not establish liability as a matter of law or if there is a factual dispute, then a directed verdict is improper and the case should be submitted to the jury. *Rennels v. Marble Products, Inc.*, 175 Colo. 229, 486 P.2d 1058 (1971).

The trial court, in rejecting Kessman's motion for a directed verdict, properly concluded that the issue whether the sheriff acted negligently in carrying out his lawful duty was a question of fact for the jury's determination. Therefore, it did not err in denying Kessman's motion for directed verdict.

The judgment is reversed and the cause is remanded for a new trial.

KELLY and BABCOCK, JJ., concur.